THE O.N. EQUITY SALES
COMPANY, Plaintiff,

v.

Virginia E. THIERS, Defendant.

No. CV–07–305–TUC–DCB.

United States District Court,
D. Arizona.

Jan. 10, 2008.

Marion Homer Little, Michael Ralph Reed, Zeiger Tigges & Little LLP, Columbus, OH, Brian Andrew Cabianca, Walter Anton Ulrich, Squire Sanders & Dempsey LLP, Phoenix, AZ, for Plaintiff.

Joel Arnold Goodman, Goodman & Nekvasil PA, Clearwater, FL, for Defendant.

## ORDER

DAVID C. BURY, District Judge.

Six motions are pending before the Court: (1) Plaintiff's Motion for Preliminary Injunction filed on August 27, 2007 (Doc. No. 10), (2) Plaintiff's Motion to Consolidate Preliminary Injunction Hearing with Trial on the Merits filed on August 27, 2007 (Doc. No. 11), (3) Plaintiff's Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability filed on August 27, 2007 (Doc. No. 12), (4) Defendant's Motion to Compel Arbitration filed on September 13, 2007 (Doc. No. 14), (5) Defendant's Motion for Protective Order filed on September 13, 2007 (Doc. No. 16), and (6) Plaintiff's Motion for Order Precluding Summary Disposition of Defendant's Motion to Compel Arbitration Pending Discovery to be Taken on the Issue of Arbitrability filed on October 1, 2007 (Doc. No. 27).

## PROCEDURAL HISTORY

On May 29, 2007, Defendant filed a claim for arbitration with the National Association of Securities Dealers (NASD) against Plaintiff. (Complaint, Ex. C.) On June 25, 2007, Plaintiff O.N. Equity Sales Company (ONESCO) filed a Complaint in federal court seeking declaratory and injunctive relief against Defendant Virgina E. Theirs (Thiers), who according to the Complaint, was an investor in a private placement offered by Lancorp Financial Fund Business Trust (Lancorp). ONESCO filed a Motion for Preliminary Injunction, which seeks to enjoin Defendant from taking any further action with respect to the arbitration claim filed by Defendant with the NASD. The nature of the arbitration action filed with the NASD against ONESCO is generally failure to supervise, failure to inspect, and negligence resulting in losses incurred by Defendant investor of at least $60,000. Defendant filed a Motion to Compel Arbitration and a Motion for Protective Order. This Court did not require oral argument to resolve these motions.

## FACTUAL BACKGROUND

ONESCO is a full service nationwide retail broker-dealer registered to do business in all states. On or about March 17, 2003, Gary Lancaster (Lancaster) made available a Private Placement Memorandum (PPM) for the Lancorp Fund Business Trust (Lancorp Fund). Lancaster was a registered representative associated with ONESCO from March 23, 2004 to January 3, 2005. Both ONESCO and Lancaster are regulated and registered entities and persons licensed by the NASD. Defendant is a 58-year-old retired computer programer investor who resides in Patagonia, Arizona.

On July 11, 2003, Defendant executed an Individual Investor Subscription Agreement to subscribe to the PPM. (Complaint, Ex. B.) According to the terms of the Subscription Agreement, Thiers "irrevocably offer[ed]" to tender to the Lancorp Fund a check in the amount of $60,000 for the purchase of 12 shares in the Lancorp Fund. The Subscription Agreement provided that "[t]he check tendered shall be held in a separate escrow account ... and shall be promptly returned to the undersigned if the shares are not subscribed for and accepted by the [Lancorp Fund].... Upon the acceptance of subscriptions for the Shares by the Trust ... the cash held in the escrow account will be released to the Lancorp Fund." The Subscription Agreement provided that Thiers "may not cancel, terminate, or revoke" her subscription.

According to the terms of the PPM, all cash payments for shares would be held in an escrow account until the closing date. The PPM also provided that the Lancorp offering would be subject to "withdrawal, cancellation, or modification by [Lancorp] without notice," and that "in the event of any material changes during this offering, this memorandum will be amended or supplemented accordingly."

The parties do not dispute that Lancaster invested significant dollars from the Lancorp Fund in Megafund, which later turned out to be a Texas-based *Ponzi*[1] scheme. Because of this bad investment, many of the Lancorp Fund investors, including Thiers, suffered significant losses, and the Lancorp Fund went into receivership.

Thiers' NASD Complaint alleges that based on Lancaster's recommendations, she made the following investment in the Lancorp/Megafund: April 14, 2004, $60,000. (Complaint, Ex. C at 16.)

## DISCUSSION

Thiers' NASD Complaint alleges claims that she invested in the Lancorp Fund based on misrepresentations and omissions made by Lancaster while he was a representative of ONESCO, and that ONESCO failed to supervise Lancaster while he was a representative of ONESCO. Thiers contends that none of her investments in the Lancorp Fund became final until after Lancaster became an associated person of ONESCO. Thiers also contends that during the period while Lancaster was a representative of ONESCO, he solicited and confirmed investments in the Lancorp Fund, and ONESCO failed to supervise him. Thiers contends that NASD Rule 12200[2] applies to all of her claims arising out of her Lancorp investments. Thiers

---

1. *See SEC v. Megafund Corp.,* CV–05–1328 (N.D.Tx.2005). Here, Defendant alleges that ONESCO failed to supervise Lancaster who misrepresented and omitted to disclose numerous material facts to Defendant concerning the Lancorp/Megafund investment, its operations, the risks involved in this investment, and the use of funds obtained from the sale of the Lancorp/Megafund investment to Defendant. Defendant alleges that the Lancorp/Megafund investment constituted a *Ponzi* scheme pursuant to which the issuers used at least a portion of the proceeds received from the issuance of this investment to make so-called

interest payment to earlier investors. (Complaint, Ex. C at 17.)

2. 12200 Arbitration Under an Arbitration Agreement or the Rules of NASD

Parties must arbitrate a dispute under the Code if:
● Arbitration under the Code is either:
(1) Required by a written agreement, or
(2) Requested by the customer;
● The dispute is between a customer and a member or associated person of a member; and

moves the Court to compel ONESCO to arbitrate her claims on grounds that Theirs was a customer of Lancaster, who was an associated person of ONESCO, at the time the dispute in question arose. *See* NASD Rule 12200. (Defendant's Memorandum in Opposition to Plaintiff's Motion to Consolidate at 11.)

ONESCO contends that Theirs was not its customer at the relevant time because Lancaster's alleged misrepresentations and omissions that accompanied Lancaster's offer of private placements and induced Thiers' investments in the Lancorp Fund occurred before Lancaster became an ONESCO representative. ONESCO also contends that Theirs' NASD Complaint does not allege that she made investments in the Lancorp Fund while Lancaster was a representative of ONESCO. ONESCO states in its Motion for Preliminary Injunction that either Theirs "is bound by the express allegations in her NASD statement of claim and, thus, she has no legal basis for compelling ONESCO to arbitrate such claims; or she has identified a factual dispute as to the timing of events giving rise to her claims for purposes of arbitrability—a dispute that cannot be summarily resolved without discovery and presentation of evidence on that very issue." ONESCO contends that it is not required to arbitrate under the NASD Rules, and moves the Court for a preliminary injunction, enjoining Theirs from arbitrating her dispute with ONESCO.

ONESCO also seeks an evidentiary hearing to address certain disputed material factual questions regarding who actually sold the subject securities, who actually made the misrepresentations or omissions, and when were these misrepresentations or omissions made to Defendant.

### A. Motion to Compel Arbitration

The question of whether a particular dispute is arbitrable is to be decided by the court, not the arbitrator. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). The standard the court applies in making the arbitrability determination is similar to the summary judgment standard, and the court should review the record to determine if the party opposing arbitration has raised any triable issue of fact. *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir.2003); *see O.N. Equity Sales v. Emmertz*, 526 F.Supp.2d 523, 2007 WL 4462655 (E.D.Pa.).[3] The court does not require an evidentiary hearing when the underlying factual circumstances which are relevant to the court's determination of arbitrability are undisputed.[4] *Multi–Financial Securities, Corp., v. King*, 386 F.3d 1364, 1367 (11th Cir.2004); *see O.N. Equity Sales v. Pals*, 509 F.Supp.2d 761 (N.D.Iowa 2007); *O.N. Equity Sales v. Prins*, 519 F.Supp.2d 1006, 2007 WL 3286406 (D.Minn.2007); *O.N. Equity Sales v. Venrick*, 508 F.Supp.2d 872 (W.D.Wash. 2007); *O.N. Equity Sales v. Rahner*, 526 F.Supp.2d 1195, 2007 WL 4258642 (D.Colo.). "[A] court is not to rule on the potential merits of the underlying claims."

---

• The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.
[*Adopted to* SR–NASD–2003–158 eff. April 16, 2007.]

**3.** *See also, O.N. Equity Sales v. Wallace,* 2007 WL 4106476 (S.D.Cal.).

**4.** *See also, O.N. Equity Sales v. Samuels,* 2007 WL 4237013 (M.D.Fla.).

*Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir.2004). "An order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

In determining whether a motion to compel arbitration should be granted, the court generally "ask[s] only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Faber*, 367 F.3d at 1052. As to the first inquiry, "[t]he NASD Code constitutes a valid arbitration agreement under the Federal Arbitration Act, 9 U.S.C. § 2, which binds ... a NASD member to submit an eligible dispute to arbitration upon a customer's demand." *Wash. Square Secs. v. Aune*, 385 F.3d 432, 436 (4th Cir. 2004); *see O.N. Equity Sales v. Gibson*, 514 F.Supp.2d 857 (S.D.W.Va.2007). As to the second inquiry, to determine whether a particular dispute falls within the scope of the NASD Rule 12200 (formerly NASD Rule 10301(a)), the complaining party must be a "customer" of the NASD member or an associated person, and the complaining party's NASD claims must have arisen "in connection with the business of such member or in connection with the activities of such associated person." *Wheat, First Se-*

*curities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir.1993).

The parties do not dispute that ONES-CO is a NASD member, and agree that Lancaster was an associated person with ONESCO from March 23, 2004 to January 3, 2005. Lancaster filed a Form U–4 with the NASD. Consequently, Lancaster and ONESCO are NASD regulated persons and entities. Pursuant to NASD Rules, ONESCO, by virtue of its NASD membership, has agreed to arbitrate claims arising out of or in connection with the business of any member and between and among members or associated persons and public customers. It follows that ONESCO has agreed to arbitrate Theirs' misrepresentation and failure to supervise claims that arose out of Lancaster's activities from March 23, 2004 to January 3, 2005, the period when Lancaster was an associated person of ONESCO.

The documentary evidence in the record demonstrates: that Theirs' money was held in an escrow account and Lancorp could terminate the offering at any time prior to the initial closing date; that in April 2004, Theirs was required to confirm her subscription when the Lancorp offering was materially changed; and, that the initial closing date did not occur until May 2004. The record before the Court demonstrates that no investment in the Lancorp Fund became final until after March 23, 2004, the date when Lancaster became an associated person of ONESCO.[5] ONESCO contends that an evidentiary

---

**5.** ONESCO relies on *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814 (11th Cir.1993), to support its contention that Theirs was not its customer at the relevant time. *Wheat, First* held that "customer status ... must be determined as of the time of the events providing the basis for the allegations of fraud." *Id.* at 820. This case is distinguishable because

Theirs' negligent supervision claim arose after Lancaster became an associated person of ONESCO. (Defendant's Memorandum in Opposition to Plaintiff's Motion Under Civil Rule 56(f) at 4–5; Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction at 3.) ONESCO's proposed construction of Theirs' arbitration claims as

hearing is necessary to determine who actually sold the Lancorp shares to Theirs, what misrepresentations or omissions, if any, induced Theirs' investment, and who made such misrepresentations and omissions. (Defendant's Memorandum in Opposition to Plaintiff's Motion to Consolidate at 2–4.) These questions go to the merits of Theirs' claims and the Court need not address them in making its arbitrability determination. After reviewing the record, the Court concludes that Theirs was a "customer" of Lancaster during the period when Lancaster was an "associated person" of ONESCO, and Theirs' claims arose in connection with the activities of Lancaster during this time period. *See* NASD Rule 12200. Consequently, Defendant is a customer entitled to demand arbitration under NASD Rule 12200. *Howsam,* 537 U.S. at 85, 123 S.Ct. 588.

### B. Motions for Preliminary Injunction

■ Applications for preliminary injunctions are measured against the following factors: (1) the movant's likelihood of success on the merits, (2) the threat of irreparable harm to the movant absent the injunction, (3) the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties, and (4) the public interest. *Lands Council v. Martin,* 479 F.3d 636, 639 (9th Cir.2007) (citation omitted). Because the Court has determined to grant Thiers' Motion to Compel Arbitration, ONESCO's

limited to the alleged misrepresentations made by Lancaster in connection with Theirs' execution of the 2003 Subscription Agreement is unpersuasive and illogical. *See, e.g., O.N. Equity Sales v. Wallace,* 2007 WL 4106476 (S.D.Cal.); *O.N. Equity Sales v. Prins,* 519 F.Supp.2d 1006 (D.Minn.2007); *O.N. Equity Sales v. Gibson,* 514 F.Supp.2d 857

motions for preliminary injunction, summary disposition, and discovery are rendered moot.

### CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration (Doc. No. 14) is **GRANTED;** Plaintiff's Motions for Preliminary Injunction (Doc. Nos. 10, 11) are **DENIED** as moot; and, all remaining motions are **DENIED** as moot. (Doc. Nos. 12, 16, 27.)

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED without prejudice** forthwith for resolution of Defendant's arbitration claim pending before the NASD Arbitration Tribunal.

(S.D.W.Va.2007); *O.N. Equity Sales v. Robinson,* 2007 WL 2840477 (E.D.Va.2007); *O.N. Equity Sales v. Venrick,* 508 F.Supp.2d 872 (W.D.Wash.2007); *O.N. Equity Sales v. Pals,* 509 F.Supp.2d 761 (N.D.Iowa 2007); *O.N. Equity Sales v. Steinke,* 504 F.Supp.2d 913 (C.D.Cal.2007).